Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 46 - 4 | **DATE** | 2/3/2004 |
| **CASE TITLE** | USA vs. Mohammed Dacca | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order defendant Mohammed Dacca's motion to quash arrest warrant [54-1] and suppress statements [54-2] is denied. Enter Memorandum Opinion and Order. Motion by defendant Mohammed Dacca to correct a factual error in his reply to the government's response to his motion to quash arrest, suppress statements and request for an evidentiary hearing [129-1] is withdrawn without prejudice with leave to re-file. Request by defendant Mohammed Dacca for a ruling on defendant's motion to quash arrest and suppress statements [126-1] is granted. Change of plea hearing is set for 2/5/04 at 11:00 a.m. Time is ordered excluded to 2/5/04 pursuant to 18:3161(h)(8)(A)(B). (X-T).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | FEB 04 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 131 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 03 CR 46 |
| | ) | |
| MOHAMMED DACCA | ) | Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The United States of America ("the Government") brought a three-count indictment against Defendant, Mohammed Dacca. Defendant was indicted in connection with a counterfeit check operation in violation of 18 U.S.C. §§ 371, 513(a), 1344, and 2. Presently before the Court is Defendant's Motion to Quash Arrest and Suppress Statements. The parties submitted briefs and stipulated to the underlying facts. For the reasons that follow, that motion is denied.

## LEGAL STANDARD

Police officers may conduct a full search of an arrestee, including the area within the arrestee's immediate control, to discover weapons and evidence incident to a legal arrest. *United States v. Queen*, 847 F.2d 346, 352 (7th Cir. 1988). An arrest effectuated without an arrest warrant is legal only if the officer has probable cause to believe the suspect has committed a crime and the suspect is not inside his home. "A law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000) (*Sawyer*).

However, probable cause does not require evidence to convict a suspect, or even evidence showing it was more likely than not that the suspect committed the crime. Instead, if the totality of the circumstances, "viewed in a common sense manner," indicates a probability of criminal activity by the suspect, probable cause exists. *Sawyer*, 224 F.3d at 679. "In making probable cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (*Funches*).

## BACKGROUND

On January 20, 2003, an employee of Dolejs Property Management, a Terminex, Inc. employee, and a building manager at the property in question entered Apartment 18 at 5011 W. Cermak in Cicero for a routine insect treatment. Dolejs Property Management managed the property where Apartment 18 was located. After knocking and receiving no response, they entered the apartment. After entering Apartment 18, the three individuals saw that no furniture was in the apartment except for a small desk. On this desk, they saw a small computer and a printer along with hundreds of checks scattered throughout the apartment. There were also blank checks scattered on the floor and the kitchen cabinets.

While inside the apartment, the building manager saw, in plain view, a check and deposit slip. The check was written by the Dolejs employee on January 8, 2003, to Washington Mutual Home Loans for his mortgage payment. On January 8, 2003, the Dolejs employee had placed this mortgage check inside an envelope and then placed the envelope in the outgoing mailbox of Dolejs Property Management, located at 8008 W. 31st Street, North Riverside, Illinois. The

building manager pointed out the check to the Dolejs employee, who then retrieved the check and the payment slip.

After the three individuals left the apartment, the owner of Dolejs and the Dolejs employee contacted the North Riverside Police Department about the discovery in Apartment 18. North Riverside Police then contacted the United States Secret Service and disclosed all the above information.

The Secret Service then obtained the leasing documents for apartment 18 and learned the sole lessee of the apartment was Defendant. The lease indicated that Defendant signed a one-year lease for Apartment 18 on August 3, 2002, and that he would be the only occupant of the apartment. The Secret Service also received the Nevada's driver's license Defendant used as identification. In addition, the Secret Service was told that the Dolejs employee had recently seen Defendant, on January 8, 2003, when Defendant visited the offices of Dolejs Property Management to pay the rent for Apartment 18 – the same day that the Dolejs employee placed his mortgage check, which was later found in Apartment 18, in the outgoing mail at Dolejs Property Management. A copy of the January 8, 2003 rent receipt stated that a cash payment was received from Defendant that day.

On the night of January 21, 2003, the Secret Service obtained and executed a search warrant for Apartment 18 and the computer located therein. During the search, agents discovered evidence suggesting that a counterfeit check factory was operating out of the apartment. The agents verified that the apartment contained no furniture except for the desk and computer. The agents also seized a printer, a briefcase, hundreds of counterfeit and legitimate checks bearing various account holders and payees, photocopies of genuine checks, lists of personal identifiers,

photocopies of identifications of various individuals, credit cards with various names and account numbers, and "Versacheck" blank check stock used to manufacture checks.

On January 22, 2003, the day after the search of Apartment 18, the Secret Service established a connection between evidence found in the apartment and an investigation of Rami Rabenu, Morad Abu Sliman, and Badi Ahmed Salama, co-defendants in the present prosecution. This evidence included a Federal Express package seized during the search which was addressed to Sliman and numerous checks and check stubs made out to the same payee of the counterfeit checks which were seized during the investigation of the co-defendants. The agents also examined the computer and found Versacheck software, insignia of various banks for placement on manufactured checks, and a list of payees, including the same payee on the counterfeit checks which were seized during the investigation of the co-defendants.

The Secret Service also interviewed the Dolejs employee and the building manager about Apartment 18 and its lessee. The agents reviewed the lease papers and presented separate photographic lineups that included pictures of Salama, Sliman, and Defendant. The building manager identified Defendant and stated that the Defendant had been seen by the building manager on at least one other occasion, at his office, to pay rent and for other reasons. The Dolejs employee identified Sliman as the individual who paid the rent for Apartment 18 on January 8, 2003. The employee also stated that Sliman identified himself as Mohammed Dacca.

Later that afternoon, the owner of Dolejs Property Management contacted Secret Service agents and stated that Defendant had just visited the building management office in North Riverside. The Owner said that Defendant claimed to have lost his key to Apartment 18 and had requested a replacement key. The building manager gave Defendant a replacement key but asked

Defendant to have it duplicated and return it. After Defendant left, Secret Service agents arrived at the building management office and waited for Defendant to return.

Defendant then returned to the office, and the agents placed him under arrest. According to the parties' stipulation, the agents believed that they had probable cause to arrest Defendant for the offense contained in the search warrant affidavit, 18 U.S.C. § 513. Defendant was transported to the Secret Service's office in downtown Chicago. While in custody, Defendant waived his *Miranda* rights and volunteered to make a statement. Thereafter, Defendant was indicted for violating 18 U.S.C. §§ 371, 513(a), 1344, and 2.

## ANALYSIS

Defendant argues that, unlike Salama, Sliman, and Rabenu, nothing connects Defendant to the items found in the apartment; and, therefore, the Secret Service agents did not have probable cause to arrest Defendant based on his association with Salama, Sliman, and Rabenu. However, probable cause may also be "based on association with persons engaging in criminal activity, [so long as] some additional circumstances from which it is reasonable to infer participation in criminal enterprise" are shown. *United States v. Ingrao*, 897 F.2d 860, 864 (7th Cir. 1990).

In this case, the Secret Service agents found evidence of a counterfeit check operation being conducted from Apartment 18. The apartment contained blank checks, Versacheck software, bank insignia, hundreds of counterfeit and legitimate checks bearing various account holders and payees, photocopies of genuine checks, and a printer. Also, checks made out to a common payee linked to Salama, Sliman, and Rabenu were present in the apartment. Photo identification, various credit card numbers belonging to different holders, a list of payees, and

personal identifiers were also in the apartment. The Secret Service then had ample reason to believe that the Defendant, based on his connection with the apartment and its contents, was also involved in criminal conduct.

Defendant argues that innocent explanations exist which show Defendant was not connected to any criminal activity that may have taken place in Apartment 18. Defendant claims that it was possible that he rented the apartment for a friend or relative who lacked credit. To support this innocent explanation, Defendant states that: (1) the evidence shows he was seen at the apartment building twice; (2) Sliman, a co-defendant who posed as Dacca, dropped off the January 8, 2003 rent payment; and (3) he did not possess a key for the apartment.

In determining whether probable cause exists, courts may consider possible innocent alternatives based on the facts known by the government agents. However, "the mere existence of innocent explanations does not necessarily negate probable cause." *Funches*, 327 F.3d at 587. Here, Defendant, who rented the apartment in August 2002, was the sole lessee of the apartment. The lease also indicated that Defendant was the sole occupant of the apartment. While Sliman dropped off a rent check for the apartment in January 2003, the Owner stated that Defendant personally had previously dropped off the rent. Moreover, it has not been shown that Defendant did not possess a key for Apartment 18; rather, the facts clearly indicate to the contrary – that Defendant had access to the apartment – he had previously asked for and was given a replacement key. Based on the totality of the circumstances, it was reasonable for the agents to conclude that Defendant had a possessory interest in Apartment 18 and was in some way responsible for the apparent criminal conduct that had occurred therein.

Finally, Defendant argues that the agents failed to identify a specific offense for which they had probable cause to arrest Defendant at the time of his arrest. Instead, Defendant asserts that Defendant was only charged with a crime, in violation of 18 U.S.C. § 513, after the Secret Service agents consulted with prosecutors. However, "an arrest may satisfy the Fourth Amendment if there was probable cause to arrest the suspect for the precise offense the officer cited or, lacking that, a 'closely related charge.'" *United States v. Reed*, 349 F.3d 457, 462 (7th Cir. 2003) (*Reed*).

Here, the parties stipulated that the Secret Service agents believed they had probable cause to arrest Defendant for the offense contained in the search warrant affidavit, a violation of 18 U.S.C. § 513. Section 513 prohibits making or possessing a counterfeit security of an organization with the intent to deceive another person or organization. The materials, machines, and other paraphernalia discussed above commonly used in such activity were found in Defendant's apartment. A "reasonable police officer acting in good faith" would be able to recommend, at the time Defendant was arrested, that Defendant was making or possessing counterfeit checks in violation of 18 U.S.C. § 513. *See Reed*, 349 F.3d at 463.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Quash Arrest and Suppress Statements is denied.

Dated: February 3, 2004

JOHN W. DARRAH
United States District Judge